IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COPPERLEAF FOOD GROUP, RICHLAND LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART STORES EAST, LP.,<br><br>    Defendants,<br><br>    and<br><br>RICHLAND ZAMAGIAS LIMITED PARTNERSHIP,<br><br>    Plaintiff-Intervenor. | 2:25-CV-00988-CCW |

**OPINION AND ORDER**

Before the Court is Plaintiff Copperleaf Food Group, Richland LLC's Motion for Preliminary Injunction, ECF No. 43. For the reasons that follow, the Court will DENY the Motion.

**I.   Background**

Copperleaf owns and operates the Shop 'N Save Grocery Store at the Richland Mall in Gibsonia, Pennsylvania (the "Richland Shop 'N Save"), which it purchased in 2024. ECF No. 61 ¶ 10. Copperleaf does not own the property from which it operates the Richland Shop 'N Save. Instead, Copperleaf is a tenant of the owner of the Richland Mall, Richland Zamagias Limited Partnership.[1] *Id.* ¶¶ 5, 30. Adjacent to the Richland Mall is a Walmart Discount Department Store (the "Gibsonia Walmart") operated by Defendants, Wal-Mart Estate Business Trust and Wal-Mart Stores East, LP (collectively, "Walmart"). *Id.* ¶ 7. When Walmart opened the Gibsonia Walmart

---

[1] The Court granted Richland Zamagias' motion to intervene as a plaintiff in this case on September 23, 2025. ECF No. 15.

in 1998, it entered into an easement agreement with the owners of adjacent parcels, including Richland Zamagias. *Id.* In exchange for receiving certain access rights from the owners of said parcels, Walmart agreed that:

> no portion of the Wal-Mart Parcel shall be used for the operation of a supermarket or grocery store, whether the same be located in a single-use free standing building or contained within a larger multi-use building including, without limitation, a 'Wal-Mart' store containing a supermarket or grocery department which, at the present time, is commonly known as a 'Wal-Mart Supercenter'.

*Id.* ¶ 31; ECF No. 61-2 at 5. The reciprocal easement agreement Walmart and Richland Zamagias executed clarifies that the restriction on the operation of a supermarket or grocery store on the Wal-Mart parcel (the "grocery restriction"), "shall not prohibit the incidental sale of food items in conjunction with the operation of a discount department store." *Id.*

In Copperleaf's first amended complaint,[2] it alleges that Walmart abided by the grocery restriction for over two decades. ECF No. 61 ¶ 8. That changed in early 2025, when Copperleaf claims Walmart decided to stop abiding by the easement and, under the guise of a store remodel, significantly expanded the grocery offerings at the Gibsonia Walmart. *Id.* ¶¶ 11–12. Copperleaf alleges that Walmart's expanded grocery operations have since caused the Richland Shop 'N Save to lose significant numbers of customers. *Id.* ¶ 15. Copperleaf further claims that Walmart's encroachment into the grocery space has eroded the Richland Shop 'N Save's goodwill in the local community and that the Richland Shop 'N Save will soon have to close. *Id.* ¶¶ 15–17.

Copperleaf filed the instant lawsuit on July 15, 2025, asserting claims against Walmart for breach of the restrictive easement.[3] *See* ECF No. 1. Copperleaf subsequently amended to add a

---

[2] On January 23, 2026, after the evidentiary hearing on the preliminary injunction occurred, Copperleaf sought leave to file a second amended complaint. ECF No. 113. The Court has not yet ruled on the motion to amend, and the current operative pleading is the amended complaint, ECF No. 61.

[3] The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the parties are diverse and the amount in controversy exceeds $75,000.

claim for tortious interference with a business contract. ECF No. 61. On November 21, 2025, Copperleaf filed the instant Motion for Preliminary Injunction. ECF No. 43. In the Motion, Copperleaf requests a preliminary injunction that would order Walmart to cease operating a supermarket or grocery store at the Gibsonia Walmart, to cease any use of the Gibsonia parcel "inconsistent with the 'incidental sale of food items,'" and to "[r]estore operations to the contractual status quo that existed before Walmart's 2025 grocery expansion[.]" ECF No. 43-1.

The Court authorized the parties to engage in limited, expedited discovery relevant to Copperleaf's Motion. ECF No. 76. On January 22, 2026, the Court held an evidentiary hearing in which Copperleaf and Walmart presented testimony from, *inter alia*, Walmart's corporate representative, the Gibsonia Walmart store manager, and Copperleaf's co-owner, Bradley Zupancic. *See* hearing transcript at 3:3–210:18.[4] The parties also presented evidence containing sales data from both the Gibsonia Walmart and the Richland Shop 'N Save. *Id.* Following the hearing, the parties requested that the Court defer ruling on the Motion until after February 4, 2026, to provide the parties with an opportunity to try to resolve the case. The parties have advised the Court that they were not able to resolve the case, and accordingly, Copperleaf's Motion is now ripe for resolution. ECF Nos. 44, 67, 73.

## II.   Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited circumstances"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989). Four factors inform a court's decision as to the issuance of a preliminary injunction:

---

[4] Given the time-sensitive nature of Copperleaf's Motion, and the fact that the official transcript of the evidentiary hearing has not yet been filed on the docket, the Court's citations are to the court reporter's unofficial transcript.

> (1) The likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) [that] the public interest [weighs in favor of granting the injunction.]
>
> ***
>
> Generally, the moving party must establish the first two factors and only if these "gateway factors" are established does the district court consider the remaining two factors. The court then determines "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."

*Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (citations omitted)); *see also Sec. & Exch. Comm'n v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) (citation omitted); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 F. App'x 727, 730–31 (3d Cir. 2009); 13 Moore's Federal Practice § 65.22 (2020).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)[.]" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *see also*, 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits). That is, the moving party "must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 37 (M.D. Pa. 2025) (citing *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980)). And, "'the burdens at the preliminary injunction stage track the burdens at trial[.]'" *Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006)).

"A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Ace Am. Ins. Co.*, 306 F. App'x at 732 (citations omitted). To establish

4

irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. To do so, the movant must demonstrate a potential harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 610 (3d Cir. 2024) (quoting *Instant Air*, 882 F.2d at 801). The risk of irreparable harm cannot be speculative; merely "[e]stablishing a risk of irreparable harm is not enough[,]" rather, the movant must make a "'clear showing of immediate irreparable injury[.]'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Grp., Inc. v. Amoco Chems. Corp*, 614 F.2d 351, 359 (3d Cir. 1980)). Thus, "[t]he dramatic and drastic power of injunctive force may be unleased only against conditions generating a presently existing actual threat[,]" and not "simply to eliminate a possibility of a remote future injury, or a future invasion of rights[.]" *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, No. 3:15-cv-22, 2016 WL 7176658, at *8 (W.D. Pa. Dec. 8, 2016) (Gibson J.).

"In the absence of exceptional circumstances, economic loss does not qualify as irreparable harm . . . [a]nd '[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable.'" *Hadeed*, 2016 WL 7176658, at *3 (quoting *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994)); *see also*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). However, courts in this Circuit have recognized that "[t]he loss of business and good will, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction[.]" *Marine Elec. Sys., Inc. v. MES Fin., LLC*, 644 F. Supp. 3d 84, 95 (D.N.J. 2022) (citing *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710,

5

2022 WL 3536494, at *6 (3d Cir. 2022)); *see also Pappan Enters. v. Hardee's Food Sys, Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (citation omitted).

Finally, "[a] movant has a particularly heavy burden when seeking mandatory injunctive relief, that is, injunctive relief that would alter, rather than preserve, the status quo." *Castillo-Perez v. Lowe*, No. 1:20-CV-02271, 2020 WL 7183579, at *2 (M.D. Pa. Dec. 7, 2020). "To obtain a mandatory preliminary injunction, the movant must show that his right to relief is 'indisputably clear.'" *Id*. (quoting *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020)); *see also Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) ("[W]hen the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy.").

## IV.   Discussion

The parties agree that Pennsylvania law governs the easement agreement at issue in the case. Transcript at 5:4–10; *see Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (holding when parties agree, either explicitly or implicitly, on the relevant law to apply, the district court in a diversity action shall apply that law).

### A.   Copperleaf Has Standing to Enforce the Grocery Restriction

Walmart argues, "as a threshold matter," that Copperleaf lacks standing to enforce the grocery restriction. ECF No. 67 at 9. Walmart points to Section 5 of the easement agreement, entitled "Remedies[,]" which provides that "[i]f any Owner . . . breaches any provision of this Agreement, then any other Owner may institute legal action against the defaulting party for specific performance, injunction, declaratory relief, damages or any other remedy provided for by law." *See* ECF No. 61-2. According to Walmart, Section 5 limits enforcement of the grocery

6

restriction to the "owners[,]" which is explicitly defined as the signatories to the agreement. ECF No. 67 at 9. Walmart argues that, as a non-owner, Copperleaf lacks standing to enforce the agreement.[5]

The Court disagrees. Section 5 permits signatories to the agreement to, *inter alia*, enforce the agreement by seeking injunctive relief. But nothing in Section 5 limits remedies, either for non-owners or any other party. And, as Richland Zamagias' tenant, it is undisputed that Copperleaf is an intended beneficiary of the agreement. *See* ECF No. 61-2 at 7 (providing that "[t]he rights, privileges or immunities conferred" under the easement agreement "are for the benefit of the Owners and any tenants or permittees of such Owners[.]"). Copperleaf thus has standing to enforce the grocery restriction. *See Falsetti v. Loc. Union No. 2026, United Mine Workers of Am.*, 161 A.2d 882, 892 (Pa. 1960) ("[G]enerally[,] a third party beneficiary may enforce rights flowing to him from a contract[.]"). Having concluded that Copperleaf has standing to enforce the easement, the Court will now consider whether Copperleaf is entitled to preliminary injunctive relief.

### B. Copperleaf Has Failed to Show that It Is Being Irreparably Harmed by Walmart's Alleged Misconduct

Copperleaf seeks a preliminary injunctive which, if granted, would require Walmart to engage in affirmative conduct—the dismantling of its grocery offerings and supporting infrastructure at its Gibsonia store. *See* ECF No. 61-1. Thus, Copperleaf must show that its right to preliminary injunctive relief is "indisputably clear." *Hope*, 972 F.3d at 320. As noted, the first two factors of the Court's analysis—the likelihood of success on the merits and irreparable harm— are "gateway" factors which Copperleaf must establish before the Court will consider the remaining factors. *Greater Phila. Chamber of Commerce*, 949 F.3d at 133; *see also Ace Am. Ins.*

---

[5] Copperleaf concedes that it is not an "owner" under the easement agreement.

7

*Co.*, 306 F. App'x at 732 ("A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."). In other words, for a preliminary injunction to issue, Copperleaf must make an "indisputably clear" showing that it is being irreparably harmed by Walmart's alleged misconduct. *Hope*, 972 F.3d at 320. Because the Court concludes Copperleaf fails to meet that heavy burden, it must deny the Motion.

In arguing irreparable harm, Copperleaf invokes *J.C. Penney v. Giant Eagle, Inc.*, 813 F. Supp. 360 (W.D. Pa. 1992) for the proposition that "where a covenant guarantees exclusivity, its breach necessarily creates irreparable injury[.]" ECF No. 44 at 13. Copperleaf further argues that Walmart's breach is causing it irreparable harm both because its damages will be difficult or impossible to prove, making injunctive relief the only appropriate remedy, and because the Richland Shop 'N Save's closure is now imminent. *Id.* at 12–18. But these arguments fail, because Copperleaf's own evidence suggests that Walmart's grocery offerings are not the cause of its rapidly declining sales volumes.

In order to analyze whether Walmart has established that it suffered irreparable harm, the Court must first clarify the relevant time period of Walmart's alleged breach of the grocery restriction. Copperleaf alleges in the operative amended complaint that Walmart began breaching the grocery restriction when it remodeled the Gibsonia store in early 2025. ECF No. 61 ¶¶ 8, 11, 12. And, during his deposition, Copperleaf's co-owner Mr. Zupancic testified that he visited the Gibsonia Walmart shortly before Copperleaf purchased the Richland Shop 'N Save in June 2024 and verified that Walmart was complying with the grocery restriction at that time. Transcript at 78:2–79:23. However, at the hearing, Mr. Zupancic also testified that Copperleaf has learned in discovery that Walmart ostensibly has been in breach of the grocery restriction for far longer than Copperleaf previously understood. Transcript at 102:8–14. In resolving the motion for

preliminary injunction, however, the Court is constrained to analyze the claims and allegations as currently pled. That means that, for purposes of deciding the instant Motion, Walmart was compliant with the grocery restriction until it remodeled the Gibsonia Walmart in 2025.

With that starting point in mind, the Court must determine whether Copperleaf has established that the harm it allegedly suffered was caused by Walmart. Based on the evidence presented at the preliminary injunction hearing, the answer is no. Copperleaf's own evidence shows that the weekly sales variances at the Richland Shop 'N Save from 2024 to 2025 were consistently negative throughout 2025, both before and after the remodel of the Gibsonia Walmart was completed in April 2025. Transcript at 63:16–64:16. In its briefing and at the evidentiary hearing, Copperleaf repeatedly invoked the difficulty of proving its damages—that is, the difficulty of proving that its defecting customers are defecting to the Gibsonia Walmart rather than some other competitor. Transcript at 185:16–186:1; ECF No. 44 at 14. But wherever these customers are going, the evidence Copperleaf offered at the hearing shows that the Richland Shop 'N Save's negative sales trends started well before Copperleaf alleges Walmart began breaching the grocery restriction. This suggests that, even if the Gibsonia Walmart has been in breach since the remodel, Walmart's conduct is not the cause of the Richland Shop 'N Save's declining market position. Showing that the Richland Shop 'N Save's closure is imminent is not enough; Copperleaf must show that Walmart's breach of the grocery restriction is causing the Richland Shop 'N Save's decline. *See Greater Phila. Chamber of Commerce*, 949 F.3d at 133 ("[T]he moving party must establish . . . the extent to which the plaintiff is being irreparably harmed *by the conduct complained of*[.]") (emphasis added). Copperleaf has not met that burden, particularly where it is requesting affirmative relief. Given that finding, the Court need not consider the likelihood of success on the merits or the other preliminary injunction factors. *See Byrd v. Aaron's,*

9

*Inc.*, No. CA 11-101, 2011 WL 2672009, at *6 (W.D. Pa. June 16, 2011) (Baxter, J.) ("In fact, the irreparable injury portion of the test is the key: irreparable injury must be present for a preliminary injunction to issue.") (citations and quotation marks omitted).[6]

### C. Copperleaf's Proposed Orders Fail to Describe in Reasonable Detail the Acts Walmart Would Be Restrained From

Even if Copperleaf was entitled to a preliminary injunction, which it is not, the Court would still be required to issue an injunction that "state[s] its terms specifically and describe[s] in reasonable detail . . . the act or acts restrained or required." *Hope*, 972 F.3d at 322. But at the hearing, counsel for Copperleaf was unable to clearly articulate how the Court could craft an order that delineates what, exactly, the Gibsonia Walmart can and cannot sell such that, in Copperleaf's estimation, Walmart would be compliant with the grocery restriction. Transcript at 193:3–202:11. In the proposed order Copperleaf attaches to its Motion, ECF No. 43-1, the Court would order Walmart to "[c]ease operating a supermarket or grocery store" at its Gibsonia store. But Walmart believes it is already complaint with the grocery restriction, and Copperleaf's Order does not identify what changes would need to be made to remedy any alleged breach of that restriction.

Copperleaf subsequently filed two modified proposed orders that would more specifically enjoin Walmart from selling "grocery products" or, in the alternative, from selling "grocery food products," ECF No. 112-1, along with lists of examples of each type of prohibited product category. But the issuance of either modified proposed injunction is still likely to lead to immediate disputes between the parties over Walmart's compliance with the same. For example, are bags of ice a prohibited "grocery food product?" What about cooking utensils or non-food

---

[6] As noted, Copperleaf invokes *J.C. Penney v. Giant Eagle*, 813 F. Supp. 360, 369 (W.D. Pa. 1992), *aff'd*, 995 F.2d 217 (3d Cir.1993) for the proposition that "irreparable harm is *almost* inherent[,]" *id.* at 369, in the breach of a restrictive covenant. But the *J.C. Penney* plaintiff was able to identify sixteen customers who had switched from the plaintiff's pharmacy to the defendants. *Id.* at 369.

kitchen supplies like parchment paper or measuring cups?  The Court is not satisfied that any of the proposed orders Copperleaf has filed with respect to this Motion would describe to Walmart, with reasonable detail, what items it is prohibited from selling.  Accordingly, it would not be feasible for the Court to fashion appropriate relief.

## V.     Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Copperleaf's Motion for Preliminary Injunction, ECF No. 43, is DENIED.

DATED this 6th day of February, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record